LAND, J.
Defendant was indicted for the murder of one S. G. Martin and was tried, foundi guilty of manslaughter, and sentenced to imprisonment at hard labor for the term of 20 years. Defendant appealed, and relies for reversal on a number of bills of exception.
Bill No. 1.
The accused, having been placed on the stand as a witness in his own behalf, was requested by his counsel to tell the jury everything that took place in connection with his trouble with the deceased, The accused thereupon stated in detail what did take place in the room, giving all the facts from his standpoint in connection with the homicide. On cross-examination the district attorney asked the accused the following question:
“Mr. Heidelberg, did you or did you not, before the shot was fired, walk to the head of Mr. Martin, and stand with your back to the door, and look into the large room adjoining the room you and Mr. Martin were in, by turning your head and looking over your shoulder?”
Counsel for accused objected to the question, on the ground that the fact inquired' about was new matter not pertinent to or connected with what had been elicited in the examination in chief. The objection was properly overruled.
In State v. Feazell, 116 La. 264, 40 South. 698, where a witness for the accused had testified as to circumstances attending the homicide, we said that:
“The state had the undoubted right to elicit on cross-examination a full and complete account of the action and conduct of both parties on the occasion of the homicide.”
Bill No. 2.
The district attorney, who was sick, waived the opening argument to the jury, and thereupon counsel for the accused requested the court to adjourn until the next day to enable them to refresh themselves and prepare for the argument. The court refused the request, but granted a delay of one hour and ten minutes. The district attorney had the legal right to waive the opening, or even to submit the ease without argument. The matter of delaying the trial for needed rest and preparation addressed itself to the discretion of the court. The bill does not show that the counsel for the accused were physically unable to make a proper presentation of the case of the defense to the jury.
Bills Nos. 3, 4, 5, 6, 7, 8, and 9.
All of these bills were reserved by the accused to the refusal of the court to permit his counsel to ask witnesses for the state called in rebuttal certain questions on cross-examination. It will suffice to consider bill No. 3. Marks Hendricks was placed by the state on the stand as a witness in rebuttal. The hill does not recite the questions propounded to the witness on behalf of the prosecution, or his answers. While the bill recites that the witness was asked to repeat matters testified to by him in chief, the per curiam states that the witness had been- asked two questions strictly in rebuttal, and that *303 lie was not asked to repeat matters testified to in bis examination in chief, but was called to rebut matters testified to by the accused. The question propounded to this witness on cross-examination was as follows: “You are positive that you found a knife in that room on the floor?” The judge sustained the objections to this question, “because no such matter was touched upon in the examination of the witness in rebuttal,” but that the witness had testified on his direct examination that he had found a knife on the floor of the room where the homicide took place two days thereafter; the room not being locked in the meanwhile. From the statement of the trial judge the only conclusion permissible is that the question was on a matter not touched upon by the state in the examination of the witness in rebuttal. When a witness is recalled and examined, the cross-examination is limited to the matter on which he has been re-examined. State v. Southern, 48 La. Ann. 628, 19 South. 668. Marr’s Crim. Jurisprudence of La. p. 738.
Bills Nos. 10 and 11.
The state asked several witnesses called in rebuttal the following question:
“Did Heidelberg or not, did he or did he not, just before the shot was fired, walk to Mr. Martin’s head, stand there with his back to the door, look into the long room, where you and Bonareaux and others were at — did he or did he not?”
While the bill recites that counsel for the defendant objected to the question on the grounds that it was leading and not a matter in rebuttal, but was merely a repetition of the testimony of the witnesses in chief, the judge in his per curiam states that he has no recollection of the question being objected to as leading, though he made a written note of the objection at the time it was made, and that the purpose of the question was to rebut evidence given by the accused that he had at no time turned his head, etc.; that while the witnesses may have, in their examinations in chief, testified in a general way to the same matter, the evidence was admissible for the purpose of rebutting a particular fact testified to by the accused.
The state had the right to rebut testimony elicited on the cross-examination of the accused as a witness in his own behalf. State v. Hebert, 39 La. Ann. 319, 1 South. 872. The accused could not be contradicted before he had testified. The bare circumstance that his testimony may have run counter to general testimony given by witnesses for the state in their examination in chief furnished no good reason for the exclusion of evidence in rebuttal tending to specifically contradict his statements given on direct or cross-examination. Contradiction is one of the modes of impeaching witnesses. Wigmore, §§.907, 908.
Bill No. 12, taken to the refusal of the judge to give special instructions to the jury on the subject of insanity, is not mentioned in brief of counsel, and therefore may be considered as abandoned.
Bill No. 13.
The bill recites that the district attorney in his argument to the jury “went on [outside of the record] to state certain facts of crimes committed in other parishes, and that the defendant objected to such remarks as prejudicial, and to the instructions of the court thereon as insufficient, and duly excepted. The judge in his per curiam states that:
“Immediately upon objection by the defense to the district attorney’s reference in argument to another case which occurred in another parish, the court promptly made the district attorney desist and instructed the jury to disregard any such reference made by the district attorney, as it had nothing to do with the case on the trial.”
The judge adds that no further instruction» were suggested by counsel for the defense.
The bill is nebulous as to the remarks of the district attorney; but, even conceding *305 that the remarks tended to prejudice the accused, the presumption is that their effect was removed by the interposition and instructions of the trial judge. State v. Easley, 118 La. 690, 43 South. 279.
Bill No. 14 has no merit, as the question called for a hearsay statement. Even the hearsay opinion of an expert on insanity is not admissible in evidence.
Bill No. 15 was reserved to certain instructions in the charge of the court to the jury. The argument in the brief, however, is confined to the following instruction:
“It is as much premeditation if it entered into the mind a moment before the act as if it entered years before. All that is required is that the malicious intent exists in the mind of the accused at the time of the giving of the fatal blow.”
There are no degrees of murder in this state, and the instruction was correct. State v. Dennison, 44 La. Ann. 135, 10 South. 599; State v. Ashley, 45 La. Ann. 1036, 13 South. 738.
Bishop says:
“The word ‘aforethought’ in the definition of murder has been taken to mean almost, if not quite, nothing. There is no particular time during which it is necessary the malice should have existed. If, for example, the intent to kill or do other great bodily harm is executed the instant it springs into the mind, the offense is as truly murder as though it had dwelt there for a longer period.” 2 New Criminal Law, § 677.
Bill No. 16 is a general exception to the charge as a whole, and presents nothing for consideration.
Bill No. 17 was taken to the refusal of the judge to give the following special charge:
“Malice aforethought means with malice after thinking; that is, doing wrong, intending to do wrong, after having thought over the matter. A thing done on the spur of the moment cannot be deliberate and of malice aforethought.”
The per curiam is as follows:
“The charge requested was fully covered in the general charge given by the court, and was not given because without qualification it might be misleading. As the jury only found a verdict of manslaughter, the accused did not suffer from a refusal of the charge.”
The general charge is full and correct on the subject of malice aforethought. The requested special instruction is erroneous and misleading on its face.
The eighteenth and last bill was reserved to the court’s refusal to grant the motion for a new trial. The motion presents no questions of law other than those already considered.
Judgment affirmed.