(83 South. 778)

No. 23544.

STATE v. ALLISON.

(June 30, 1919. On Rehearing, Feb. 2, 1920.)

*(Syllabus by Editorial Staff.)*

1. ARSON ⊂⟂2 — EXPLOSIVES ⊂⟂2 — STATUTE DENOUNCING WILLFUL BURNING OR BLOWING UP OF BUILDINGS AMENDED BY ELIMINATING REFERENCE TO BURNING ALONE.

In view of Const. art. 32, providing no law shall be revived or amended by reference to its title, but the act revived or section as amended shall be re-enacted and published at length, Act No. 263 of 1908, making it a crime willfully and maliciously to fire, burn, or blow up any house or building, etc., as amended by Act No. 108 of 1918, has eliminated from it all reference to destruction of property by fire, and is applicable only to destruction with explosives.

2. STATUTES ⊂⟂225—DUTY TO CONSTRUE STATUTES RELATING TO SAME SUBJECT-MATTER SO AS TO GIVE EFFECT TO EACH.

It is the duty of the Supreme Court to construe both of two or more statutes relating to the same subject-matter so as to give effect to each when read together.

3. ARSON ⊂⟂45—BURNING OF DWELLING OR OTHER PLACES WHERE HUMAN BEINGS ARE CUSTOMARILY FOUND PUNISHABLE UNDER CERTAIN STATUTES.

The burning of a dwelling or other place, whether usually occupied or not, is punishable as provided in Act No. 123 of 1918, while the burning of any structure or vehicle in which human beings are customarily to be found prior to Act No. 108 of 1918 is to be prosecuted, tried, and punished under Act No. 263 of 1908.

On Rehearing.

4. ARSON ⊂⟂2—PROSECUTION UNDER STATUTE PARTIALLY REPEALED PERMITTED BY SAVING CLAUSE.

Defendant was properly indicted in 1914 under Act No. 263 of 1908, for arson by having willfully, maliciously, etc., burned a certain house usually inhabited at night, Act No. 108 of 1918, amending, partially repealing, and re-enacting Act No. 263 of 1908, providing no offense committed against the law as repealed shall be condoned or prosecution affected.

5. PARDON ⊂⟂2—STATUTE NOT OPERATING AS LEGISLATIVE PARDON FOR DEFENDANT SETTING FIRE TO BUILDING.

In view of Act No. 108 of 1918, where defendant set fire in 1914 to a house in which human beings resided, in violation of Act No. 263 of 1908, becoming liable to the death penalty, Act No. 123 of 1918, providing a term in the penitentiary instead of death as the penalty for burning a dwelling house, the same thing as a house in which human beings ordinarily reside, does not operate as a legislative pardon for him.

O'Niell and Provosty, JJ., dissenting.

Appeal from Criminal District Court, Parish of Orleans; James O'Connor, Judge ad hoc.

Indictment for arson against Samuel J. Allison. From judgment quashing the indictment, the State appeals. Judgment annulled and reversed, and case remanded.

A. V. Coco, Atty. Gen., and Chandler C. Lazenberg, Dist. Atty., and A. D. Henriques, Asst. Dist. Atty., both of New Orleans (St. Clair Adams, of New Orleans, of counsel), for the State.

Wm. H. Byrnes, Jr., of New Orleans, for appellee.

DAWKINS, J. This is an appeal by the state from a judgment of the lower court quashing an indictment against the defendant for arson. The bill charges that the accused—

"did then and there willfully, maliciously, and feloniously, in the nighttime, set fire to and burn a certain house bearing the municipal number 3130 De Soto street, in the city of New Orleans, in which said house, at the time aforesaid, one Camillia Allison, one Beatrice Allison, one Arabella Allison, one Oralie Allison, one Josephine Allison, and one Vivian Allison each were then and there usually staying and residing at night," etc.

Defendant, through counsel, filed a motion for a bill of particulars, asking that the state be required to specify the statute under which accused was being prosecuted, which

was accordingly granted, and the district attorney replied that the charge was made under Act No. 263 of 1908.

Thereupon defendant moved to quash the indictment on the ground that Act No. 263 of 1908 had been repealed by the Act No. 123 of 1918, which contained no saving clause as to prosecutions then pending, and that accused had been thereby granted a legislative pardon.

The question of whether or not Act No. 263 of 1908 had been repealed was presented and passed upon by us in the case of State v. Brett, No. (23355) 144 La. 980, 81 South. 461, decided on March 31, 1919, and determined adversely to the contention now made by the counsel for the defendant. The motion to quash in that case was based upon the contention that Act 263 of 1908 had been repealed by Act 123 of 1918, and we held that that was not true, but the effect of Act 108 of 1918 escaped our attention. However, we are earnestly urged to reconsider our ruling in that case, and to hold that Act No. 263 of 1908 was repealed or superseded by Act No. 108 of 1918.

In the Brett Case we traced and differentiated the different sections of the Revised Statutes and laws dealing with arson, showing that a clear distinction had always been made between burning in the day or night time and in the burning of dwellings and other structures where people lived or were customarily to be found and buildings not so occupied, we found that the accused in that case could and should be tried and punished under Act No. 263 of 1908.

[1] We quote Act 263 of 1908 as follows:

"An act making it a crime to willfully and maliciously fire or burn or blow up any house, building, shed, outhouse, levee, dam, ship, vessel, steamboat, street or railroad car, or other vehicle or other construction, and to provide a penalty therefor.

"Section. 1. Be it enacted by the General Assembly of the state of Louisiana, that if any person shall at any time willingly and maliciously set fire to or burn or blow up or destroy with dynamite, gunpowder or other explosive substance, or set fire or explode any explosive substance with intent to blow up or destroy any house, building, shed, outhouse, levee, dam, ship, vessel, steamboat, street or railroad car, or other vehicle, or other construction in or on which human beings are customarily to be found, such person shall be guilty of a crime and on conviction thereof shall suffer the death penalty.

"Sec. 2. Be it further enacted, etc., that all laws or parts of laws in conflict with this Act, or contrary to its provisions, are hereby repealed: Provided no offense heretofore committed against the laws so repealed shall be condoned by this repeal, or the prosecution thereof in any wise abated or affected."

The offense in the present case was charged to have been committed on the 8th day of May, 1914, and the indictment was returned into court and filed on the 19th day of February, 1919. So that, at the time when the right of action on the part of the state accrued, the act just quoted was in full force and effect, and the accused could undoubtedly have been charged, tried, and convicted, and sentenced thereunder.

We also quote the Act No. 108 of 1918, which it is claimed took the place of the act of 1908, as follows:

"An act to amend and re-enact section 1 of Act 263 of 1908, approved July 9th, 1908, entitled 'An act making it a crime to willfully or maliciously fire or burn or blow up, any house, building, shed, outhouse, levee, dam, ship, vessel, steamboat, street or railroad car, or other vehicle or other construction, and to provide the penalty therefor.'

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that section 1 of Act 263 of the General Assembly of the State of Louisiana, approved July 9th, 1908, be and the same is hereby amended and re-enacted so as to read as follows, to wit:

"Section 1. Be it enacted by the General Assembly of the state of Louisiana, that if any person shall at any time willfully and maliciously [here the words "set fire to or burn" found in the act of 1908 are omitted] blow up or destroy with dynamite, gunpowder or other explosive substance [here "or set fire to or explode any explosive substance" of the act of

1908 also omitted] *or attempt to* [words in italics new matter] explode any explosive substance with intent to blow up or destroy any house, building, shed, outhouse, levee, dam, ship, vessel, steamboat, street or railroad car, or other vehicle or other construction in or on which human beings are customarily to be found, such person shall be guilty of a crime, and on conviction thereof shall suffer the death penalty.

"Sec. 2. Be it further enacted, etc., that all laws or parts of laws in conflict with this act, or contrary to its provisions, are hereby repealed: *Provided no offense heretofore committed against the laws so repealed shall be condoned by this repeal, or the prosecution thereof in any wise abated or affected.*" (Italics ours.)

A comparison of the two acts quoted will show that, while Act No. 108 of 1918 declares its purpose to amend and re-enact section 1 only of Act No. 263 of 1908, the second or concluding clauses of the two are identical.

On further consideration, it seems to us that the argument made by the counsel for the accused herein in brief is absolutely unanswerable to the point that the clear intent and purpose of the Legislature was to substitute for section 1 of Act No. 263 of 1908 section 1 of Act No. 108 of 1918, and that there was a clear purpose to eliminate therefrom the destruction of the various kinds of property enumerated by fire, making the said law applicable only to destruction with explosives, and to add in place of the setting fire to or exploding with intent, etc., the attempt to do so. Any other conclusion would leave the act of 1908 (which consisted of only two sections, the second being merely the concluding or repealing clause) stripped of all of its provisions, except the one denouncing and punishing the burning of such places or property; whereas at the same session of the Legislature the same member introduced and there was enacted into law (Act No. 123 of 1918) a bill denouncing and punishing the burning of a dwelling, though, as indicated in the Brett Case, there is no distinction made in the last-mentioned act when such structures are inhabited.

We quote the following from Cyc. vol. 36, p. 1079, verbo Statutes, to wit:

"It is a familiar and well-settled rule that a subsequent statute revising the subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied. The rule is applicable even when the provisions of a prior law are contained in a special act. Where there is such revision, there need be no express words of repeal. Neither is it required that the latter statute shall be so repugnant to the former that both cannot stand and be construed together. But it must appear that the subsequent statute revised the whole subject-matter of the former one and was evidently intended as a substitute for it.

"Where a statute is revised, some parts of the original act being omitted, the parts which are omitted cannot be revived by construction, but are to be considered as annulled, provided it clearly appears to have been the intention of the Legislature to cover the whole subject by the revision."

The text is supported by the authorities cited in the notes, including the case of State ex rel. Jarvo v. Judge, 37 La. Ann. 578, in which this court held that, when the Revised Statutes of 1870 were adopted, codifying the general statutes of the state, the provisions thereof superseded all other statutes dealing with the same subject-matter, save and except those specifically excluded, even though there were no actual conflict, under the repealing clause. It will be noted that no reservation was made as to any part of section 1 of Act 263 of 1908 in the repealing clause of Act 108 of 1918, except as to crimes committed or prosecutions pending at the time of the passage of the latter law.

We quote further from Cyc. vol. 36, p. 1083, as follows:

"Generally speaking, where a statute is amended 'so as to read as follows,' the amendatory act becomes a substitute for the original, which then ceases to have the force and effect of an independent enactment; but this does not mean that the original is abrogated for all purposes, or that everything in the latter statute is to be

regarded as if first enacted therein. On the contrary, the better and prevailing rule is that so much of the original as is repeated in the latter statute without substantial change is affirmed and continued in force without interruption; that so much of the act as is omitted is repealed, and that any substantial change of other portions of the original act, as also any matter which is entirely new, is operative as new legislation."

We quote further from Sutherland on Statutory Construction as follows:

"Revision of statutes implies a re-examination of them. The word is applied to a restatement of the law in a corrected or improved form. The restatement may be with or without material change. A revision is intended to take the place of the law as previously formulated. By adopting it the Legislature say the same thing, in effect, as when a particular section is amended by the words 'so as to read as follows.' The revision is a substitute; it displaces and repeals the former law as it stood relating to the subjects within its purview. Whatever of the old law is restated in the revision is continued in operation, as it may operate in the connection in which it is re-enacted.

"In Bartlett v. King, Dewey, J., said: 'A subsequent statute revising the whole subject-matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must on principle of law, as well as in reason and common sense, operate to repeal the former.'

"Though a subsequent statute be not repugnant in all its provisions to a former, yet, if it was clearly intended to prescribe the only rule which should govern, it repeals the former statute. Without express words of repeal a previous statute will be held to be modified by a subsequent one, if the latter was plainly intended to cover the subject embraced by both, and to prescribe the only rules in respect to that subject that are to govern. Where a provision is amended by the form 'to read as follows,' the intention is manifest to make the provision following a substitute for the old provision and to operate exclusively in its place. Does a revision import that it shall displace the last previous form; that it is evidently intended as a substitute for it; that it intended to prescribe the only rule to govern? The authorities seem to answer emphatically, Yes. The reasonable inference from a revision is that the Legislature cannot be supposed to have intended that there should be two distinct enactments embracing the same subject-matter in force at the same time, and that the new statute, being the most recent expression of the legislative will, must be deemed a substitute for previous enactments, and the only one which is to be regarded as having the force of law."

Page 208 et seq. § 154.

"Where a statute is revised, all parts of the former act omitted from the revision are repealed, though the omitted provisions may not be inconsistent with the revision, as the revision discloses the legislative intent that it shall embrace the whole subject. Morris v. Indianapolis, 177 Ind. 369, 94 N. E. 705, Ann. Cas. 1915A, 65.

"Laws are presumed to be passed with deliberation, with a knowledge of all existing laws on the same subject. If they profess to make a change by substitution of new for old provisions, a repeal to some extent is thus suggested, and the extent readily ascertained. Thus amendment is frequently made by enacting that a certain section shall be so amended as 'to read as follows,' then inserting the substituted provision entire without specification of the change. The parts of the former law left out are repealed. This intention is manifest. There is a negative necessarily implied that such eliminated portion shall no longer be in force. The re-enacted portions are continuations and have force from their original enactment. * * * " Sutherland's Statutory Construction, p. 177, § 137.

It would thus appear that, whenever the words "amended and re-enacted so as to read as follows" are used, the intention is clear that the provisions which follow are to take the place of and be substituted for those which formerly appeared in the section or law so amended. In fact, under the Constitution of this state, it is not permissible to revive or amend any law or section of a law by reference merely to the title or number, but the whole statute or section, under constitutional injunction, is required to be reproduced in full as amended.

Article 32 of the Constitution reads:

"No law shall be revived, or amended by reference to its title, but in such cases the act revived, or section as amended, shall be re-enacted and published at length."

The purpose of this restriction was to require that the whole of such law or section

should appear in such revision or amendment, in order that those to be affected thereby would not be required to look elsewhere to find it. The Legislature cannot dissect a section of a statute taking therefrom only a part and amend it, and leave the remainder a valid and existing law; but must reincorporate all such portions as it desires to retain in the amending act. Otherwise the amending law would violate this provision of the Constitution, in that the whole law or section would not "be re-enacted and published at length." The conclusion is irresistible, therefore, that we cannot presume the Legislature intended to violate the Constitution, and must be held to have repealed any remaining provision in the section so amended.

What is the effect of Act 108 of 1918 on the present case?

[2, 3] As will be seen from the concluding section of Act 108 of 1918 quoted earlier in this opinion, a saving clause appears, not only as to pending prosecutions, but "no offense heretofore committed against the laws so repealed shall be condoned by this repeal or the prosecution thereof in any wise abated or affected." So that, unless there is some other law which precludes the prosecution of this offense, which was committed in 1914, when the act of 1908 was in full force and effect, there is nothing to prevent the state from proceeding under the charge as it stands.

As pointed out in the Brett Case, up to the passage of Acts Nos. 108 and 123 of 1918, the lawmaker had always maintained a distinction between the arson or burning of houses, etc., in which human beings were customarily to be found and those uninhabited, and provided severer penalties; but in Act 108 of that year it saw fit to eliminate the destruction by fire of such places (that is, those customarily inhabited) from among those crimes carrying a possible death penalty, but made full reservation as to all offenses previously committed, and placed in Act 123 of the same year the word "dwelling," which may easily and logically be interpreted to mean when occupied or unoccupied. The latter act, therefore, did not deal with the particular offense involved in this case; for that had already been dealt with in Act 108, and reservation made as indicated. It is our duty to construe both so as to give full effect to each, and this is accomplished by holding that, in so far as future acts may be concerned, the burning of a dwelling or other place, whether usually occupied or not, shall be punished as provided in Act 123 of 1918; while the burning of any such structure or vehicle in which human beings are customarily to be found prior to Act 108 of 1918 is to be prosecuted, tried, and punished under Act 263 of 1908.

We recognize that the result of this conclusion is to hold contrary to our views in the Brett Case, and that as to the future no distinction will exist, in so far as destruction by fire is concerned, between houses, vessels, vehicles, etc., whether customarily inhabited or not, but such was the apparent intention of the lawmaker, and our duty is to interpret and not to enact legislation.

For the reasons assigned, it is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled and reversed, and this case is remanded to be proceeded with in accordance with law and the views herein expressed.

### On Rehearing.

SOMMERVILLE, J. After having heard additional arguments, and having given further consideration to the case, we conclude that our former opinion and decree are correct, and they will be reinstated.

The several laws relative to burning and blowing up were formerly grouped in five sections of the Revised Statutes; from 841 to 845, inclusive. This grouping was retained until the year 1908, when Act 263, p. 384,

was adopted. In that act sections 841 and 842, providing for the offenses of setting fire to and blowing up at night of houses in which people usually reside (section 841), and the setting fire to and blowing up of houses during the day in which people usually reside (section 842), were consolidated, without referring to section numbers 841 and 842; in other words, the dividing line between the offense being committed in the day and in the night was obliterated, and the offenses were denounced as one offense, and the penalty of death was provided for the commission of the crime.

It was under this act, numbered 263 of 1908, that defendant was indicted for setting fire to and burning a house in the nighttime in which persons usually resided.

[4] Act 263 was amended and re-enacted in 1918 by Act No. 108, p. 176. In amending and re-enacting Act No. 263 provision was made only for the blowing up of houses, etc. The setting fire to houses, etc., was omitted from the act. But in section 2 of that act, No. 108, the former act, No. 263 of 1908, was kept alive as to the burning of houses, which had been denounced in Act 263, and which offense had been committed prior to 1918. The proviso contained in section 2 of Act No. 108 is as follows:

"Provided no offense heretofore committed against the laws so repealed shall be condoned by this repeal, or prosecution thereof in any wise abated or affected."

In this last act, No. 108, the death penalty was reimposed as had been provided for in Act No. 263 of 1908. It therefore follows that defendant was properly indicted in 1914 under Act No. 263 of 1908, as the offense charged against him is charged to have been committed by him prior to 1918; and he is liable to prosecution only under said Act No. 263 of 1908.

Other sections of the grouping in the Revised Statutes, numbered 843 and 845, were amended by special reference to the sections by numbers. No. 844, covering the burning of fences, etc., has not been amended.

Section 843, referring to the burning or blowing up of outhouses, etc., was amended by Act No. 70 of 1914, p. 187, by excluding therefrom the blowing up of outhouses, etc. It provided as amended only for the setting fire to outhouses, etc.

The new grouping of the offenses of setting fire to and blowing up was made in the year 1918 by Acts No. 107, p. 175, No. 108, p. 176, and No. 123, p. 196. These three acts were introduced by the same member of the Legislature at the same session, and were known as House Bills Nos. 58, 59, and 61. They were evidently introduced on the same day. Acts 107 and 108 were approved on July 5, 1918, and Act 123 became a law without the Governor's signature at the same time. They were doubtless promulgated at the same time, and they became effective as laws in New Orleans on the same day. They are companion acts, and cover all of the sections of the Revised Statutes on the subject except section 844, with reference to the burning of fences, etc. They are laws in pari materia, and they must be read together.

In this new grouping the setting fire to buildings and the blowing up of buildings are separated, and they are made separate offenses. Act No. 107 provides for the attempt to willfully and maliciously blow up any house, etc. Act No. 108 provides for the blowing up of houses, etc.; and Act No. 123, p. 196, provided for the setting fire to or attempting to set fire to a dwelling house, outhouse, etc. This last act amends and reenacts section 843, R. S., by excluding therefrom the attempt to blow up and the blowing up of any house etc., or any outhouse, etc. (which is denounced in Act 108), and by including therein the setting fire to and burning, or attempting to set fire to and burn, any dwelling house or outhouse, etc.; and

the penalty therein is a sentence of not less than one year or more than 20 years at hard labor.

[5] Defendant contends that this last act, No. 123, operates a legislative pardon for him, as the penalty for the crime charged against him has been changed from that of death to that of hard labor. He shows that, while the indictment against him charges that he set fire to a house in which human beings resided, under Act 263 of 1908, which carried a death penalty, the later statute No. 123 of 1918, p. 196, provides for the burning of a dwelling house, which is the same thing as a house in which human beings usually reside, and that the penalty is changed from death to a term in the penitentiary; and he argues that the later act, which has no saving clause, operates a legislative pardon for him.

But Act 123 of 1918, p. 196, refers to the future, and not to the past. It cannot have any effect as to defendant, or to the offense of burning a dwelling committed prior to its passage, because the Legislature, at the same session, and on the same day, in Act No. 108, said that:

"No offense heretofore committed against the laws so repealed (Act No. 263 of 1908, under which defendant was indicted) shall be condoned by this repeal, or prosecution thereof in any wise abated or affected."

Acts 108 and 123 must be read together; and they plainly say:

"No offense heretofore committed against the laws so repealed (Act 263 of 1908) shall be condoned by this repeal, or prosecution thereof in any wise abated or affected."

Act 263 of 1908 was repealed by Act 108 of 1918, but the repeal did not affect prose-cutions under Act 263, or condone any offense against that act.

Act 123 of 1918 does not repeal Act 263 of 1908, either in terms· or otherwise. Act· 123 is entitled "An act to amend and, re-·enact section 843 of the Revised Statutes," etc., which referred to the, burning of out-houses, etc. Act No. 263· was repealed in terms by Act 108 of 1918. Act 123 of 1918, amending and re-enacting section 843, R. S., now provides for the burning of dwelling houses, as does the already repealed act, No. 263 of 1908. But, prosecutions under Act 263 were not to be abated or affected by the repeal.

The law under which defendant was indicted (No. 263 of 1908) having been retained in full force and effect by legislative action contained in the proviso in section 2 of Act No. 108, 1918, Act No. 123 of 1918 has no effect as to defendant or as to the crime charged against him, and it does not operate as a legislative pardon as to him.

Act 123 is numbered in its regular order, but it does not contain subsequent action by the Legislature in 1918 to the action contained in Act No. 108 of the same session; for the two acts were enacted on the same day. One act is not subsequent to the other; they are both of the same date.

Prosecution of the defendant must proceed, according to the terms of Act No. 108, of 1918, under and by virtue of the provisions of Act No. 263 of 1908, p. 384.

Our former opinion and decree in this case are reinstated; and they are made the opinion and decree in the case.

PROVOSTY, J., dissents. O'NIELL, J., dissents and hands down reasons. See 83 South. 783.